Dennis L. MARTIN, Plaintiff,

v.

BARNESVILLE EXEMPTED VILLAGE
SCHOOL DISTRICT BOARD OF
EDUCATION, Defendant.

No. 97CV00992.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 2, 1999.

Samuel Neal Lillard, Mowery and Youell, Worthington, OH, for plaintiff.

John Curtis Albert, Crabbe Brown Jones Potts & Schmidt, Columbus, OH, for defendant.

## ORDER AND OPINION

MARBLEY, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff brings this action alleging violations of his rights under the Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Ohio Revised Code ("Revised Code") § 4112.02.[1] For the reasons stated below, Defendant's Motion is hereby **GRANTED.**

### I.

On April 17, 1984, Plaintiff, Dennis Martin, was hired as a bus driver by Defendant, Barnesville Exempted School District Board of Education. Plaintiff became a member of the Barnesville Association of Classified Employees, OEA/NEA ("Union") soon after his hire. On July 31, 1991, Plaintiff bid for and was awarded an afternoon custodian position.[2]

---

**1.** Plaintiff submits and the Court agrees that Ohio disability actions and federal disability actions require the same analysis. *See Hoffman v. Fidelity Brokerage Servs., Inc.,* 959 F.Supp. 452, 457 n. 1 (S.D.Ohio1997) ("The essential elements of a claim under the ADA and the Ohio handicap discrimination statute are the same"). Thus the state and federal disability claims will be discussed under the federal ADA guidelines.

**2.** Pursuant to a collective bargaining agreement, employment positions with Defendant are filled through a process on which applicants submit bids for available positions and Defendant awards positions to successful bidders. Under

On November 6, 1991, Robert Miller, the president of the school board, observed Plaintiff consuming beer while on the job at an elementary school building. When Mr. Miller confronted Plaintiff about this conduct, Plaintiff denied the incident and left the building. Mr. Miller filed a report with the Superintendent, David Wilson, who informed Plaintiff that he was suspended with pay pending investigation. Upon completion of the investigation, the School Board recommended that Plaintiff be terminated for consuming alcohol at work, leaving the building without adequate employee coverage, leaving his work incomplete, and for conduct in direct violation of Defendant's "drug free work place" policy. As a result of Union negotiations, however, Plaintiff and Defendant entered into a Last Chance Agreement ("LCA") which allowed Plaintiff to keep his job. The LCA required Plaintiff: (1) to admit "that he has a problem with consumption of alcohol; he has a drinking problem;" (2) to enter into an alcohol rehabilitation program; (3) to accept a four week suspension without pay; and (4) to submit to drug and/or alcohol testing upon request for two years. In compliance with the LCA, Plaintiff entered and completed a 28–day alcohol rehabilitation program. He has worked for Defendant without incident since 1991. In addition, due to lack of suspicion, Defendant did not subject Plaintiff to drug or alcohol testing during the two year probation period.

From 1994 to 1997, Plaintiff unsuccessfully attempted to secure available positions with Defendant. On November 22, 1994, Plaintiff submitted a bid for a bus mechanic position. Plaintiff's bid was rejected. Defendant's stated reason for rejecting Plaintiff's bid was that Plaintiff was not the individual with the most seniority for the position's classification. In December 1994, Plaintiff submitted bids for a bus garage worker position and a bus driver position. Plaintiff's bids were again rejected, this time based on the 1991 beer incident. In turn, Plaintiff filed a grievance

the collective bargaining agreement, vacant positions were to be awarded to the employee having the greatest district seniority among those employees submitting bids.

with the Union for the denial of his bids. In the fall of 1995, Plaintiff submitted a bid for a school bus driver position. Defendant did not consider Plaintiff's bid for the position.

On May 16, 1997, Plaintiff's grievance for the denial of the bus garage worker and bus driver positions was submitted to binding arbitration. The arbitrator found that there was no evidence that Plaintiff had an alcohol problem that precluded him from being qualified for the positions. Defendant filed a Motion to Vacate the Arbitrator's Award in the Ohio Court of Common Pleas for Belmont County. The Common Pleas Court found that "the [arbitrator's] award ... was irrational and arbitrary, and held that the award should be [reversed and] vacated." *In the Matter of Barnesville Exempted Village School District Board of Education v. Miller*, 1997 Ohio App. LEXIS 5253 *3 (Belmont Cty.1997). On appeal, the Court of Appeals reversed the Common Pleas Court and reinstated the arbitrator's award. *See Id.*

In August, 1997, Plaintiff submitted a bid for a position as a School Bus Aid. Again, Plaintiff was not awarded the position. Defendant's reasons for not awarding Plaintiff the position are unclear from the record. On September 5, 1997, Plaintiff filed this action, alleging federal and state disability discrimination.[3] On February 17, 1998, after exhausting its state appeals relating to the arbitration proceedings, Defendant awarded Plaintiff the bus garage worker and bus driver positions that he bid for in 1994. On September 9, 1998, Defendant filed this Motion for Summary Judgment pursuant to FED.R.CIV.P. 56.

## II.

According to FED.R.CIV.P. 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is

3. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on January 22, 1997, and has requested a right to sue letter. There is no indication in the papers submitted to the Court whether the EEOC granted the right to sue.

entitled to judgment as a matter of law." FED.R.CIV.P. 56. The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

■ In the employment discrimination context, a plaintiff must present a prima facie case to survive a defendant's motion for summary judgment. To establish a *prima facie* case under the ADA, a plaintiff must show: (1) he was a disabled person within the meaning of the ADA; (2) he was otherwise qualified to perform the essential functions of the job; (3) he suffered an adverse employ-

ment action under circumstances giving rise to an inference of unlawful discrimination; and (4) a non-disabled person replaced or was selected for the position that the disabled person sought. *See Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 779 (6th Cir.1998) (*citing Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996)).

Once a plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cehrs*, 155 F.3d at 779. The burden then shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the burden of production shifts back to the plaintiff, the evidence produced to show a *prima facie* case and the "inferences drawn therefrom may be considered by the trier of fact on the issue of whether the [employer's] explanation is pretextual." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### III.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). The term "qualified individual with a disability" includes individuals that have successfully completed a rehabilitation program and no longer engage in prohibited use.[4] *See* 42 U.S.C. § 12114(b)(1)

The ADA defines the term "disability" as:

---

4. "Qualified individuals with a disability" includes individuals with a disability who, with or

without reasonable accommodation, can perform the essential functions of the employment posi-

(1) a physical or mental impairment that substantially limits one or more major life activities;

(2) a record of such an impairment; or

(3) being regarded as having such an impairment.

*See* 42 U.S.C. § 12102(2)(A). The first criterion, a physical or mental impairment that substantially limits one or more major life activities, does not apply this case. Plaintiff denies that he has a physical or mental impairment. Plaintiff's argues that the Defendant acted on the basis of his having either a "record of" an impairment, viz., alcohol dependency, or being "regarded as" having such impairment. The Court's analysis, therefore, must focus on the second and third criteria of the disability definition. The regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") indicate that in order to have a "record of" an impairment, an individual must have a history of, or be misclassified as having an impairment that substantially limits a major life activity.[5] *See* 29 C.F.R. § 1630.2(k). The regulations specifically enumerate ways an individual can demonstrate that he was "regarded as" having an impairment that substantially limits one or more of the major life activities.[6] *See* 42 U.S.C. § 12102(2)(A)(3).

Although the three definitions of disability are distinct, they have a common component. Under each definition, the disability—real or perceived—must be one that *substantially limits one or more major life activities.* The EEOC's Interpretive Guidance provides that "[d]etermining whether a physical or mental impairment exists is only the first step in determining whether or not an individual is disabled ... An impairment rises to the level of disability if the impairment substantially

limits one or more of the individual's major life activities." 29 C.F.R.App. § 1630.2(j). Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); 28 C.F.R. § 35.104. The term "substantially limits" mean inability to perform, or a severe restriction on the ability to perform as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1).

Plaintiff maintains that he is not an alcoholic and has never had a drinking problem. He states that he was unlawfully subjected to adverse employment decisions based on a "record of" alcohol problems and due to Defendant "perceiving" him as having a drinking problem. Thus, Plaintiff argues that he is disabled under the ADA and protected as a qualified individual with a disability. Plaintiff's argument is misplaced.

Having a history of, or being misclassified as having an impairment, is only the first step in an analysis under the ADA. Plaintiff must also show that the "record of" impairment, or the impairment that he is "regarded as" having, is one that *substantially limits a major life activity.* Plaintiff maintains that the LCA containing his admission of alcohol abuse, establishes a "record of" a drinking problem. Plaintiff further contends that Defendant made adverse employment decisions with regard to his bids for positions because Defendant perceived him as having a drinking problem. Plaintiff did not allege in his complaint, nor has he argued or demonstrated in response to Defendant's Motion, that the LCA establishes that he is *substantially limited in a major life activity,* or that Defendant regarded him

---

tion that such individual holds or desires. *See* 42 U.S.C. § 12111(8)

5. The ADA empowers agencies, such as the EEOC, to develop plans, regulations, and guidelines, to assist entities covered under the ADA in understanding their responsibilities under the Act. *See* 42 U.S.C. § 12206.

6. The EEOC Regulations provide that there are three ways a plaintiff can show that he is "regarded" as having a disability:

(1) The individual may have an impairment which is not substantially limiting in a major

life activity but is perceived by the employer ... as constituting a substantially limiting impairment;

(2) the individual may have an impairment which is only substantially limiting in a major life activity only because of the attitudes of others toward the impairment; or

(3) the individual may have no impairment at all but is regarded by the employer ... as having a substantially limiting impairment. 29 C.F.R. § 1630, App. B, § 1630.2(1).

as having an impairment *that substantially limits a major life activity.* In fact, Plaintiff has not attempted to prove that the disability he is alleged to have had substantially limits any major life activity.

At oral argument, Plaintiff argued that in a "record of" or "regarded as" case, the ADA does not require a showing that the alleged impairment substantially limits a major life activity. This reading of the statute is incorrect. To establish a *prima facie* case, the statute requires that the impairment—real, recorded, or perceived—substantially limits a major life activity. *See* 42 U.S.C. § 12102(2)(A). Case law in the Sixth Circuit has been unequivocal that under each definition of disability, a plaintiff must show that the alleged impairment *substantially limits a major life activity. See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996); *Roush v. Weastec, Inc.,* 96 F.3d 840, 844 (6th Cir.1996); *Cehrs,* 155 F.3d at 780–81; *see also Green v. Rosemont Industries, Inc.,* 5 F.Supp.2d 568, 572 (S.D.Ohio1998). When, as in this case, there is no showing that Plaintiff's alleged impairment substantially limits a major life activity, Plaintiff cannot establish a *prima facie* case under the "record of" or "regarded as" definitions of disability. As such, Defendant is entitled to summary judgment.

Plaintiff's reliance on *Miners v. Cargill Communications, Inc.,* 113 F.3d 820 (8th Cir. 1997), is misplaced. In *Miners,* an employee of a radio station was terminated because the radio station allegedly regarded her as being an alcoholic. *Id.* at 823. The radio station gave the employee the choice between entering a chemical-abuse treatment program or being fired. *Id.* at 822. Rather than enter the rehabilitation program, the employee chose to be fired. *Id.* The employee brought suit and the district court granted the radio station's motion for summary judgment. *Id.* On appeal, the Eighth Circuit reversed the district court, because the trial court had failed to decide whether the employee presented a *prima facie* case of discrimination before it analyzed the radio station's proffered reasons for the firing. *Id.* at 823. The *Miners* court concluded that the employee had established a *prima facie* case of dis-

crimination under the ADA because evidence was presented indicating that the radio station regarded the employee as being an alcoholic. The Court did not, however, reach the issue of whether Plaintiff's perceived impairment substantially limited a major life activity. The *Miners* court merely states that the radio station regarded the employee as an alcoholic and thus, the employee was disabled within the meaning of the ADA.

In the Sixth Circuit, however, merely showing that an individual suffers from an impairment is only the first step in the disability analysis. *Kocsis,* 97 F.3d at 885; *see also* 29 C.F.R.App. § 1630.2(j). Plaintiff must also show that he is substantially limited in a major life activity. *Id.* Accordingly, this Court cannot follow the reasoning in *Miners,* as it simply does not address the *substantially limits* question which is at issue in this case.

In an ADA action, Plaintiff must establish a *prima facie* case of discrimination to survive summary judgment. Plaintiff has not presented evidence showing that he is disabled under the "record of" or "perceived as" definitions of disability. As such, Plaintiff cannot establish a *prima facie* case of disability discrimination. Defendant's Motion for Summary Judgment, therefore, is hereby **GRANTED.**

**IT IS SO ORDERED.**