OPINION
{¶ 1} This is an appeal by respondents-appellants, the Ohio Patrolmen's Benevolent Association Dispatchers Unit (hereinafter, "OPBA"), from the April 2, 2003, judgment of the Common Pleas Court of Seneca County modifying the award of an arbitrator pursuant to a collective bargaining contract dispute. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} This case arises from the layoff of dispatchers in the City of Fostoria Police Department. In response to an impending deficit of approximately $1,500,000 for 2002, petitioner-appellee, the city of Fostoria (hereinafter, the "City"), determined that a twenty percent budget reduction was necessary in all city departments. The reduction in the police department was implemented through layoffs. To this end, on February 1, 2002, the City laid off two patrol officers, all three of the full-time employees in the dispatcher bargaining unit, and three part-time dispatchers employed at the Fostoria Police Department.[1] After the layoffs occurred, police officers performed all police dispatcher duties.
 {¶ 3} One of the laid off full-time dispatchers, Louanne K. Grine (hereinafter, "Grine"), filed two grievances against the city of Fostoria under the grievance procedures as set forth in the collective bargaining agreement (hereinafter, "CBA" or "Agreement") between the OPBA Dispatchers Unit and the City.[2] Grine's first grievance was that police officers were being assigned to perform dispatching duties for more than the four hours per shift allowed by Article 10, Section 2 of the CBA. Grine's second grievance protested her layoff. In each of Grine's written grievances, she requested that the matter be remedied by returning all three members of the dispatchers bargaining unit back to work and also requested that the members be made whole for any losses sustained as a result of the layoff.
 {¶ 4} The grievances were reviewed first by Grine's immediate supervisor and then by the Chief of Police. Both Grine's supervisor and the Chief of Police were unable to resolve the grievance because they lacked the authority to reinstate Grine or the other laid off full-time dispatchers. In response, Grine appealed the grievance to arbitration with the authorization of the OPBA per Section 3, step 4 and section 4(D) of Article 9 of the CBA. Pursuant to the CBA, the City and the OPBA selected an arbitrator through the American Arbitration Association.
 {¶ 5} The matter was heard before the arbitrator, Colman R. Lalka, on July 1, 2002, for a final and binding determination. The issue presented to the arbitrator was whether the City violated the CBA when it used patrol officers to perform the police dispatcher duties.
 {¶ 6} The arbitrator rendered his decision on August 30, 2002, in favor of OPBA, Grine and the other members of the dispatchers bargaining unit by finding that the layoff of all of the dispatchers and the use of patrol officers to perform all of the dispatcher duties violated the CBA. The arbitrator ordered all three members of the dispatchers bargaining unit to be returned to work and to be made whole for all losses sustained as a result of the City's violation of the CBA.
 {¶ 7} Subsequent to the arbitrator's decision, the City of Fostoria filed a motion in the Common Pleas Court of Seneca County to vacate and modify the arbitration award pursuant to R.C. 2711.10, R.C. 2711.11, and "public policy."
 {¶ 8} The common pleas court entered judgment on April 2, 2003, modifying the arbitrator's award primarily on the ground that "the arbitrator ruled on a `matter not submitted' to him when he extended his award to benefit the other, non-grieving, dispatchers." Pursuant to R.C. 2711.11, the court ordered that the arbitrator's award be "modified so as to apply to only Ms. Grine."
 {¶ 9} In addition, the common pleas court found that the arbitrator had made an "evident miscalculation of figures" by overturning all of the layoffs, when the CBA permits police officers to perform dispatching duties for a cumulative total of twelve hours per day, which would allow for the layoff of at least one full-time dispatcher.
 {¶ 10} It is from this judgment that the OPBA, on behalf of Grine and the dispatchers bargaining unit, appeals and sets forth four assignments of error for our review.
 {¶ 11} For purposes of clarity and brevity, we will address the OPBA's first three assignments of error together.
 ASSIGNMENT OF ERROR NO. I The trial court erred in concluding that the Arbitratorexceeded his powers under the collective bargaining agreement(hereinafter referred to as "Agreement").
 ASSIGNMENT OF ERROR NO. II The trial court erred in concluding that the Arbitrator'sdecision departed from the terms of the Agreement.
 ASSIGNMENT OF ERROR NO. III The trial court erred in concluding that the Arbitrator ruledon a matter not submitted to him and in ordering the Arbitrator'saward modified so that it applied only to Dispatcher Grine.
 {¶ 12} Generally, Ohio courts must give deference to an arbitrator's award and presume the validity thereof. Lima v.Fraternal Order of Police, Allen App. No. 1-02-88, 2003-Ohio-6983, at ¶ 10; citation omitted. A common pleas court's review of an arbitration decision is, therefore, quite narrow.Plastech Engineered Products, Inc. v. Cooper StandardAutomotive, Inc. Hancock App. No. 5-03-26, 2003-Ohio-6984, at ¶ 9; citing Goodyear Tire Rubber Co. v. Local Union No. 200
(1975), 42 Ohio St.2d 516, 520.
 {¶ 13} A court may only vacate, modify or correct an arbitration award if the party appealing the award is able to establish that the award is defective in a manner recognized by R.C. 2711.10 or 2711.11.[3] R.C. 2711.11 provides, in part pertinent to this case, that a court of common pleas may modify
or correct an arbitration award if:
(B) The arbitrators have awarded upon a matter not submittedto them, unless it is a matter not affecting the merits of thedecision upon the matters submitted; * * * [.]
 {¶ 14} The court of appeals review is conducted under the same standard. Plastech Engineered Products, Inc. v. CooperStandard Automotive, Inc. Hancock App. No. 5-03-26, 2003-Ohio-6984, at ¶ 10; citing Barnesville Exempted VillageSchool Dist. Bd. of Edn. v. Barnesville Assn. of ClassifiedEmployees (1997), 123 Ohio App.3d 272, 274. The appellate court, pursuant to R.C. 2711, is confined to reviewing only those orders issued by the court of common pleas; the merits of the arbitration award are generally not reviewable. Galion v. Am.Fedn. of State Cty. Municipal Employees Ohio Council 8, AFL-CIO (Oct. 7, 1993), Crawford App. No. 3-93-9; citing TheDelphos Herald, Inc. v. De Callier (Jan. 17, 1991), Allen App. No. 1-89-109.
 {¶ 15} The arbitrator's award in the case sub judice directed that all of the full-time dispatchers, not just Grine who filed the grievance, be returned to work and be made whole for losses sustained as a result of their improper layoff. The common pleas court, however, found that the CBA does not provide for "group grievances" or "class action" grievances because the Agreement does not contain express language permitting one bargaining unit member, in this case Grine, to grieve on behalf of other members of the dispatchers bargaining unit. Thus, the court held that the "arbitrator ruled on a `matter not submitted' to him when he extended the award to benefit the other, non-grieving, dispatchers." The court modified the arbitrator's award, pursuant to R.C. 2711.11(B), to apply only to Grine.
 {¶ 16} The OPBA asserts that in the absence of any prohibition in the CBA on the filing of class action grievances, such group grievances must be allowed and that the common pleas court erred in ruling otherwise. Conversely, the City maintains that because the CBA does not expressly provide for class action grievances, the court was correct in modifying the arbitrator's award and restricting its application to the sole individual grievant, Louanne Grine.
 {¶ 17} The issue for us to decide, then, is whether the portion of the grievance seeking a remedy for all members of the bargaining unit is properly "submitted to" an arbitrator for decision when only one member files a grievance and the CBA lacks specific language authorizing "group" or "class" grievances. As did the trial court, we conclude that it is not.
 {¶ 18} Article 9 of the parties' CBA defines and sets forth the procedure to be followed when a member of the bargaining agreement files a grievance. Section 4(A) of Article 9 provides that an arbitrator "shall have no power to add to, subtract from, change, modify or amend any of the provisions of this Agreement and he/she shall decide the issues presented on the basis of [evidence presented] and the express terms of this Agreement." Emphasis added.
 {¶ 19} No language in the CBA at issue herein expressly authorizes or otherwise provides for class action grievances. The language employed in Article 9 of the CBA characterizes the grievance procedure as applying to individual grievants. The CBA uses the singular rather than the plural form in referring to the person covered by the grievance procedure.[4] In addition, although Grine submitted a grievance demanding that all dispatchers, including herself, be returned to work and be made whole, neither of the other two laid off dispatchers filed individual grievances.
 {¶ 20} An arbitrator derives his power solely from the contract between the parties and the issue(s) presented to him for arbitration. Shawnee Local School Dist. Bd. of Edn. v.Shawnee Edn. Assn. (July 23, 1997) Allen App. No. 1-97-06, citing Ohio Office of Collective Bargaining v. Ohio Civil Serv.Assn. (1991), 59 Ohio St.3d 177, 183. Accordingly, because the CBA does not expressly provide for group or class grievances, because the specific terms of the CBA forbid an arbitrator from "add[ing] to * * * any of the provisions of this Agreement * * * " (CBA Article 9, Section 4A), and because neither of the other two bargaining unit members filed individual grievances, the relief awarded by the arbitrator as to the non-grieving dispatchers was an award on a matter that was not, and could not be, submitted to him under the parties' CBA. Consequently, the common pleas court did not err in modifying the arbitrator's award to apply solely to Grine, the individual grievant herein.
 {¶ 21} Last, although the trial court in its judgment entry indicated that it found that the arbitrator "exceeded his authority" and that the arbitrator's decision departed from the CBA, it is evident that the court did not ultimately rely on those findings as the basis of its judgment. If the trial court had relied on its findings that the arbitrator exceeded his authority and had departed from the CBA, it would have been required to vacate the arbitrator's award. R.C. 27111.10(D). The trial court, however, modified and corrected the award, which is the appropriate statutory remedy available to a court when it finds that an arbitrator issued an award upon a matter not submitted for arbitration or where the arbitrator based any part of its award on an evident miscalculation of figures. R.C.2711.11(A) and (B).
 {¶ 22} The OPBA's first, second, and third assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV The trial court erred in concluding that the Arbitratorcommitted an "evident miscalculation of figures" in rendering hisaward and in modifying the Arbitrator's award.
 {¶ 23} R.C. 2711.11(A) provides that a court of common pleas may modify or correct an arbitration award if the arbitrator's award contains "an evident material miscalculation of figures." Pursuant to that statutory provision, the common pleas court held that the arbitrator had made an "evident miscalculation of figures" when the award ordered the City to return all three of the full-time dispatchers to work. The common pleas court determined that police officers could be utilized for one four-hour shift for each of the three eight hour shifts per day, i.e. three non-consecutive four-hour shifts per day. The remaining twelve hours of dispatcher duty remaining each day would be performed by members of the dispatchers bargaining unit. The court, accordingly, modified and corrected the arbitrator's award to permit the City to layoff at least one full-time dispatcher.
 {¶ 24} This decision by the common pleas court to modify the arbitrator's award was based upon Article 10, Section 2 of the CBA. Article 10, Section 2 provides that:
In the event of a reduction in force from the policedepartment due to lack of work or lack of funds, patrol officersmay be assigned to dispatcher duties no more than four (4) hoursper shift except in the case of an emergency.
Under this section, a police officer is expressly permitted to perform dispatcher duties for up to four hours for each eight hour shift when a reduction in force has been occasioned by a lack of funds. It is, therefore, only necessary for the City to have enough dispatchers to fill a total of three shifts of four hours per day, which is a total of 12 hours per day.
 {¶ 25} Accordingly, the common pleas court did not err in finding that the arbitrator's award failed to fully take into account Article 10, Section 2 of the CBA and made an evident material miscalculation of figures. The OPBA's fourth assignment of error is thereby overruled.
 {¶ 26} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., and Bryant, j., CONCUR.
[1] The three part-time dispatchers who were laid off are not members of the dispatchers bargaining unit, are not entitled to file grievances with the OPBA, and are not involved in this appeal.
[2] The OPBA represents three separate bargaining units in the City of Fostoria including the patrol officers and detectives, command officers, and police dispatchers. Article 3, Section 1 to the collective bargaining agreement provides that: "The City recognizes the Ohio Patrolmen's Benevolent Association as the sole and exclusive bargaining agent for all full-time dispatchers in the bargaining unit."
[3] R.C. 2711.13 provides that "[a]fter an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections2711.10 and 2711.11 of the Revised Code."
[4] For example, Section 3 of Article 9 of the CBA, speaks only in terms of the procedures to be followed by an individualgrievant when filing a grievance. Article 9, Section 2 defines a "grievance" as a "complaint that Management has violated the term of this agreement or that Management has improperly disciplined or discharged an employee covered by this Agreement." Emphasis added.