WILLIAM CARGILE CONTRACTOR, INC., APPELLEE, *v.*
CONTRACTORS SERVICE COMPANY, APPELLANT.

[Cite as William Cargile Contractor v. Contractors Serv.
Co. (1971), 29 Ohio App. 2d 128.]

(No. 11519—Decided August 9, 1971.)

*Messrs. Aronoff, Rosen & Lerner,* for appellee.
*Messrs. Rolf, Dolle, Rueger, Mongan & Leming,* for appellant.

HESS, P. J. This is an appeal on questions of law from the Hamilton County Municipal Court.

William Cargile Contractor, Inc., plaintiff and appellee in this case, herein referred to as plaintiff, is engaged in general construction and cement contracting work in the greater Cincinnati, Ohio area. The defendant and appellant in this cause, Contractors Service Company, a corporation, herein referred to as defendant, is engaged in the heavy construction business and sublets portions of its construction contracts.

The defendant, as a general contractor, entered into an agreement with the city of Sharonville, Hamilton County, Ohio, to develop an industrial park in that city. On September 17, 1969, pursuant to this agreement, defendant entered into a "subcontract agreement" with the plaintiff in which plaintiff agreed to install the concrete pave-

ment and curbing for a street in the industrial park for the sum of $54,195.

In its pertinent parts, the subcontract agreement reads as follows:

"1. Work to be Performed. The Subcontractor agrees to furnish all labor, materials, equipment, tools, management, skill and instrumentalities, and all other things necessary in, or in connection with, the full performance of all work required under the Contract items described under Paragraph 3 of this agreement and in accordance with special conditions hereinafter contained, except for Wire Mesh, which will be furnished by the Contractor; also, grading to be within a tenth, plus or minus.

"2. Costs and Expenses to be Paid. The Subcontractor agrees to pay for all costs and expenses including, but not limited to, labor, materials, equipment, machinery, fuel, oil, tools, management, skill, and instrumentalities used in, or in connection with, the performance of this Contract, except for Wire Mesh as indicated in Paragraph 1, above, when and as bills or claims therefor become due, and to furnish satisfactory evidence to the Contractor, when and if required, that he has paid all payrolls, bills, expenses, and costs of every type and nature whatsoever connected with the performance hereto.

"4. Payments. All billings are due and payable on the tenth of the month following date of billing, except that ten per cent (10%) retainage will be withheld from each payment until all work has been accepted by the Village of Sharonville, Ohio."

In its complaint, plaintiff alleges that pursuant to the subcontract written by the defendant there is due and owing to it the sum of $1,945.08, with interest from June 15, 1970, the date upon which construction of the street and curbing was completed. The answer of defendant is a general denial.

The trial court found in favor of the plaintiff and entered judgment for plaintiff in the sum of $1,945.08, with interest and costs. It is from that judgment this appeal is taken.

The one assignment of error presented by the defendant is as follows: "The trial court erred in failing to grant judgment for defendant upon conclusion of submission of the evidence."

It appears from the record that during the construction of the street and curbing, the village of Sharonville provided inspectors and testing engineers to approve or reject the work done by the plaintiff. Upon completion of the work and receipt of favorable reports from the inspectors and testing engineers the defendant was billed for and paid the village the sum of $1,945.08 for the services provided by inspectors and testing engineers, which sum then was deducted by defendant from the balance allegedly due the plaintiff on its subcontract.

It is admitted by the defendant that the work performed by plaintiff in the construction of the street and curbing was done in a workmanlike manner and is satisfactory; that neither the plaintiff nor defendant hired the inspectors or engineers; and that the engineers and inspectors were employed and paid by the village of Sharonville. It is not disputed that defendant paid the village the sum of $1,254 for inspection fees, and $691.08 for testing and engineering services, a total of $1,945.08 "required" by the village of Sharonville. There is no evidence presented to establish that the amount paid by the village for the inspection and engineering services is not a fair and reasonable sum.

In the narrative bill of exceptions, it is stipulated by the parties that "should plaintiff prevail, plaintiff would be entitled to recover the amount prayed for in the complaint, namely, $1,945.08 with interest and costs."

It is the contention of the plaintiff that it has fully and completely performed all work required of it under the subcontract agreement with the defendant; and that the subcontract does not require plaintiff to pay the inspection and engineering costs withheld by the defendant.

The sole question to be determined in this appeal is whether the trial court erred in entering judgment for the plaintiff-subcontractor which, in fact, found that plain-

tiff is not required to pay the inspection and engineering fees paid by the defendant to the village of Sharonville.

Counsel for both the plaintiff and defendant signed the narrative bill of exceptions which supports the conclusion that before the city "would accept the work required under the general contract which defendant had with the city, the city required testing and inspection by engineers"; that neither defendant nor plaintiff had engaged the parties who inspected the work performed by the plaintiff; and that the defendant wrote the contract signed by the parties.

Under the subcontract's subheading of "costs and expenses to be paid" (by the plaintiff), it was agreed as follows: "[Plaintiff will] pay for all costs and expenses * * * but not limited to labor, materials * * * and instrumentalities used in, or in connection with, the performance of this contract * * * when and as bills or claims therefor become due * * * and to furnish satisfactory evidence to the Contractor, when and if required, that he has paid all payrolls, bills, expenses, and costs of every type and nature whatsoever connected with the performance thereto."

It is the contention of the plaintiff that the inspection and engineering costs paid by the defendant cannot be included in that portion of the agreement which provides for the plaintiff to pay "costs of every type and nature whatsoever connected with the performance thereto." Plaintiff further claims that this language refers to instrumentalities not mentioned, but used in the construction of the street and curbing under the *ejusdem generis* rule of law.

The *ejusdem generis* rule cannot apply in the instant contract by reason of the specific provision that the costs and expenses to be paid by the plaintiff are *"not limited to* labor, materials, equipment, machinery, fuel, oils, tools, management, skill and instrumentalities used in, or in connection with the performance of this contract." (Emphasis added.)

The ordinances of the city, if any, relative to the right of the city to employ inspectors and engineers are not in

evidence. The contract of the defendant with the city does not appear in the record. However, there is undisputed testimony by the president of the defendant corporation as follows: "* * * before the city * * * would accept the work required under the general contract which the defendant had with the city, the city required testing and inspection by engineers; that defendant had paid the city * * * for inspection fees relating to Cargile (plaintiff) work."

So far as the record is concerned, it must be concluded that the city was within its legal right in requiring the inspection and engineering costs incurred by it to be paid.

Under these circumstances, the question reoccurs of whether that portion of the contract that "all payrolls, bills, expenses, and costs of every type and nature whatsoever connected with the performance hereto" requires the plaintiff to bear the expense incident to the inspection and engineering costs.

We have determined that from the information contained in the record presented to us that the inspection and engineering costs were incident to and connected with the performance of the work done by the plaintiff under its subcontract and that the plaintiff is required to pay said costs.

The judgment of the Hamilton County Municipal Court is reversed and final judgment is granted for the defendant.

*Judgment reversed.*

Young and Shannon, JJ., concur.