JUSTICE WARNER
dissents.
¶46 I dissent. The Court gives mere lip service to the basic concept that Klein is required to exhaust all of her remedies by use of the grievance procedure. By intricate and complicated analysis, which will make the bar of a great Pennsylvania city proud, the Court twists the provisions of the CBA to reach the desired conclusion that Klein may both grieve and sue.[1]
¶47 Initially, I disagree with the Court that this case falls within the narrow exception to the rule stated in Small and MacKay. See ¶ 11. It is far from certain that the CBA in question is not susceptible to an interpretation that covers Counts II and IV, as well as Counts I and III, of Klein’s complaint. I agree with the reasoning of the District Court set forth in ¶ 6. The CBA is intended to be a basic and complete agreement between the parties concerning terms and conditions of employment. And, as the Court notes, the CBA states that any disciplinary action may be applied through the grievance procedure. The CBA obviously intends that the grievance procedure could, at the very least, arguably cover all disciplinary matters, including the investigation of Klein’s alleged improper actions.
¶48 The Court incorrectly interprets the CBA to say that Klein can have her cake and eat it too. Under the Court’s reading of the agreement, Klein is not required to elect either the remedy of *538 arbitration or of a civil suit, but is allowed to grieve those complaints she desires and then sue the DOC over the remainder.
¶49 The error by the Court is in ¶¶ 24-26 where it misinterprets the CBA to say that it does not require that the question of whether an employment action is arbitrable be submitted to an arbitrator. To the contrary, when arbitration was selected by Klein, she was required to submit all of her claims that are arguably within the purview of the CBA to the arbitrator, and it is the arbitrator, not a reviewing court, that makes the decision whether any such claims are arbitrable under the agreement.
¶50 The parties intended to enter into a binding agreement which is complete and covers the terms and conditions of Klein’s employment. The Union and DOC agreed that they would adjust all employee disputes under the agreement. Importantly, the parties also agreed that any disputes concerning the interpretation of the CBA would be submitted to the arbitrator.
¶51 The facts as outlined by the Court make it clear that Klein’s claims, including her alleged damages for deceit and for negligent infliction of emotional distress, arise from her employer’s treatment of her as an employee. In the District Court and in her appellate brief in this Court, Klein acknowledges that the claim for deceit alleged in Count II of her complaint is based upon her employer’s misrepresentations leading up to and during its interview with her concerning her conduct as an employee; she also admits that the claim for negligent infliction of emotional distress alleged in Count IV of her complaint is a result of the Department’s actions leading up to her discharge. There can be no doubt that these matters constitute “employment action.” A reasonable interpretation of the CBA could be that these claims against Klein’s employer arise out of the conditions of her employment. Klein advances another interpretation, claims the CBA is not ambiguous, and asserts that none of the claims in her complaint are arbitrable. The Court agrees in part with Klein and in part with DOC.
¶52 This is a “competing interpretations” case. The CBA is susceptible to at least two, if not three, reasonable but conflicting interpretations regarding the arbitrability of DOC’s employment actions as alleged in Klein’s complaint. DOC offers one interpretation and Klein offers another. The Court comes up with a third alternative and concludes that Counts I and III of her complaint were decided by the arbitrator, and thus were necessarily arbitrable, and Counts II and IV are not subject to arbitration. Under the present circumstances both the CBA *539 itself and the rule in Union-Scioto Loc. Sch. Dist. Bd. of Educ. v. Unioto Support Assn., 603 N.E.2d 375, 376 (Ohio App. 1992) (cited with approval in Missoula Educ. Assn., 259 Mont. at 445, 857 P.2d at 700), dictate that when arbitration is invoked, the arbitrator, not the Court, is to interpret the agreement.
¶53 The Court notes at ¶ 16 that the CBA provides that employees desiring to contest an employment action through alternative statutory or civil procedures may not contest the same action by use of the grievance procedures. Then, at ¶ 24, the Court states that nothing in the CBA says that whether a grievance is arbitrable must first be submitted to the arbitrator. This latter statement misses the obvious. Arbitration was chosen by Klein. She herself went to the arbitrator, and thus was required to submit all of her claims to arbitration, including the question of whether all of her claims are covered by the agreement. Having chosen arbitration, Klein must arbitrate all of her claims.
¶54 Klein does not deny that both the claims she made before the arbitrator and those she now makes in her complaint arise out of the same integrated set of facts. Contrary to the Court’s assertions at ¶¶ 31, 38, Klein’s tort claims for deceit and emotional distress are not wholly independent of the employment agreement. The only reason Klein and DOC had anything to do with each other was their employment relationship. In truth, Klein’s tort claims are not wholly independent of the employment relationship. They are firmly rooted in that relationship, and thus are subject to arbitration. Buckhorn, 18 Cal. Rptr. 3d at 219 (citing Vianna, 33 Cal. Rptr. 2d at 190); see also Tate v. Saratoga Sav. & Loan Assn., 265 Cal. Rptr. 440 (Cal. App. 1989) (applying arbitration clause to tort claims having their roots in the contractual relationship between the parties).
¶55 Klein chose to take her employment claims to an arbitrator, placing the interpretation of the CBA in his hands. Thus, she was contractually and legally required to have the arbitrator interpret the agreement and decide if her deceit and emotional distress claims were arbitrable under this particular CBA. She cannot now claim in a separate civil action that her tort claims are not arbitrable. Cf. Missoula Educ. Assn., 259 Mont. at 445, 857 P.2d at 700; Union-Scioto, 603 N.E.2d at 376.
¶56 A major reason for requiring a public employer to bargain in good faith with its employees’ representative is to secure a reasonably quick and inexpensive resolution of disputes for the benefit of both labor and management. There is little incentive to agree to an arbitration *540 provision in a CBA if one must face both arbitration and a civil suit in order to finally determine an employee’s rights and obligations. The CBA in question here, expressly in Article 17, Section 3E, prohibited both an arbitration proceeding and a civil lawsuit. The Court’s insistence on invading the province of the arbitrator and interpreting the agreement itself not only defeats the purpose of this particular agreement, it deters both employers and unions from agreeing to arbitrate disputes. Ms. Klein may or may not ultimately be successful in this instance. However, both she and DOC now have to litigate the same facts twice. The Court’s decision this day to depart from long established labor relations rules which deter multiple proceedings reopens Pandora’s Box and does mischief to both employers and employees. I dissent.

 Philadelphia lawyer: inter alia, “a shrewd lawyer versed in the intricacies of legal phraseology and adept at exploiting legal technicalities.” Webster’s Third New International Dictionary, Unabridged 1697 (Philip Babcock Gove, ed., Merriam-Webster, Inc. 2002).